320 So.2d 242 (1975)
Dobin FRIEDMAN
v.
Donald E. OLIVER
Mrs. Donnell Dodd, wife of/and Joseph D. CRAFT, Jr.
v.
Donald E. OLIVER.
Nos. 6960, 6961.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1975.
*243 Arthur C. Reuter, Reuter & Reuter, New Orleans, for plaintiffs-appellees.
Emile L. Turner, Jr., Thomas M. Young, New Orleans, for defendant-appellant.
Before REDMANN, BOUTALL and MORIAL, JJ.
REDMANN, Judge.
Defendant contracted to buy plaintiffs Crafts' home, with necessary documents to be prepared by plaintiff Friedman (whom defendant also employed to examine title to the property). From judgments for the Crafts for the forfeit of a deposit (represented by a note) because of nonperformance by defendant, and for Friedman for legal and notarial fees, defendant appeals.
The issues include whether the written buy-sell contract was subject to an unwritten suspensive condition (the payment to defendant of a salary bonus by his employer) which remained unfulfilled, and whether lawyer-notary Friedman may recover for services performed after he learned that defendant had advised Craft that defendant would not purchase.
We affirm the judgment for the Crafts and reverse that for Friedman.
The buy-sell contract, specifying that the act of sale was to occur by November 1, 1973, and secured by a 10% deposit note (against which $500 was concomitantly paid), was drafted on a printed form in Friedman's office on September 14, 1973. On September 24, defendant advised Craft that (because, defendant had learned, the anticipated bonus would not be paid) he could not pay the cash portion of the price and therefore could not perform. On September 26, Craft listed the house for sale with a real estate agent, and the agent placed on the property "for sale" signs (which defendant saw, since his own home was just across the street).
At this point the facts become unclear. Defendant understood the September 26 "for sale" signs as conclusive confirmation of his understanding on September 24 that Craft was to "go down and talk to Mr. Dobin Friedman the next day and release me." But Craft testified that rescission was not agreed to September 24, although defendant did then inform him of his inability to meet the cash requirement and "said to forget about the $500" which defendant had given Craft September 14 to apply against the deposit note. Neither Craft nor defendant made any further effort to speak with the other. Defendant never inquired whether Craft had arranged the matter with Friedman, and Craft never explained to defendant that, despite defendant's *244 expressed inability to perform and Craft's placing the property for sale through an agent, Craft was holding defendant to the contract.
However, on October 11 Friedman wrote defendant a title opinion letter, advising that necessary certificates and survey "will be ordered," and requesting the setting of a convenient time for the act of sale. On October 18 Friedman again wrote Craft, this time by registered mail, fixing the act of sale for 10 a. m. November 1. On November 1, when defendant did not appear to take title, Friedman and the Crafts executed a notarial act reciting the tender of title at the appointed hour. The following day Friedman and the Crafts filed these suits.

The Crafts' Claim
The Crafts must prevail in their suit on the note given as a deposit on the buy-sell contract, unless defendant proves that the buy-sell contract was either rescinded or, by failure of the alleged but unwritten condition of the bonus, became ineffective. The burden of proof is defendant's.
Defendant's testimony of the alleged agreement to rescind was not very positive. Craft's testimony to the contrary is sufficient support for the trial court's rejection of rescission.
Similarly, the testimony of both Craft and Friedman was sufficient to support the trial court's conclusion that defendant's receipt of a bonus was not an agreed condition of his obligation to buy the house. This case is unlike Guichard v. Greenup, La.App.1972, 259 So.2d 93, in which the provision of a 5¼% loan was an express and written condition (and only the cause of that condition's not being met was uncontemplated by the parties); in our case the ability to pay $20,000 cash was not a condition. Our case is also unlike Lemon Tree of Ruston, Inc. v. Harvey, La.App.1969, 227 So.2d 177, which treated a written provision which referred to a loan without expressly making it a condition of the buy-sell agreement; there an ambiguous written clause was construed in the light of uncontradicted parol, while here we have neither an ambiguous clause nor uncontradicted parol.

Friedman's Claim
Friedman did not recall exactly when it was that Craft told him that defendant had told Craft that defendant "would not go through with the transaction." He would place it at about three or four weeks prior to the November 1 deadline for the act of sale. Craft says it was about October 1 that he told Friedman. The real estate agent who hand-wrote a September 27 addendum to her listing agreement testified that Craft told her both how to word it, and that Friedman had given the wording to Craft, so as to avoid commission liability either on a sale to defendant or on failure of defendant to "release" the property for sale to another.
Thus, the evidence, including a virtual admission by Friedman, is that he had reason to believe as early as October 1 that defendant would have no use for his services, yet he thereafter went ahead with those services. Friedman, a lawyer, knew that the employment of a lawyer is mandate, terminable at the client's will; C.C. 3028; Cabral v. Heitkamp, La.App.1971, 252 So.2d 353. A client who orders a title examination because he is a prospective purchaser will ordinarily have no use for the examination once he is no longer a prospective purchaser.
In our opinion, when Friedman learned at the beginning of October that defendant told Craft he could not purchase, Friedman's attorney-client relationship with defendant obliged him to verify defendant's situation. Communication with defendant would have immediately made certain what Craft had already acted upon (and what Friedman acted upon ultimately in sending the notice of sale to defendant *245 though not to Craftby registered mail): defendant had decided not to purchase, and therefore could get no benefit whatsoever from Friedman's as yet unrendered services. Friedman could have recovered for services already performed, but he could not resist termination of his mandate. He has not shown that any services were performed before October 1 (nor their worth), and we are therefore unable to award any portion of the fees claimed.
The judgment in favor of Craft is affirmed at defendant's cost; the judgment in favor of Friedman is reversed and his suit is dismissed at his cost.